**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| EVEREST NATIONAL INSURANCE COMPANY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN CLAIMS MANAGEMENT, INC.,<br><br>Defendant. | Civil Action No. 22-2710 (MAS) (RLS)<br><br>**MEMORANDUM OPINION AND ORDER** |
|---|---|

**RUKHSANAH L. SINGH, United States Magistrate Judge**.

**PRESENTLY** before the Court are two Motions by Plaintiffs Everest National Insurance Company and Everest Security Insurance Company (collectively, "Everest") to Strike: the Declaration of Michael Kaney and the exhibits thereto, (Doc. No. 108) (the "Kaney Declaration") (the "Motion to Strike the Kaney Declaration"), (Doc. No. 112); and an agreement between Everest and Engle Martin and Associates, Inc. (the "Engle Martin Agreement"), attached as Exhibit 1 to the Certification of Joseph Catuzzi, Esq., in further support of Defendant American Claims Management, Inc.'s ("ACM") motion for partial summary judgment (Doc. No. 114-2) (the "Motion to Strike the Engle Martin Agreement"), (Doc. No. 119). ACM opposed both motions, (Doc. Nos. 117, 120), to which Everest replied, (Doc. Nos. 118, 121). The Court has fully considered the parties' written submissions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below and for good cause shown, the Court **GRANTS** the Motion to Strike the Kaney Declaration and **DENIES** the Motion to Strike the Engle Martin Agreement.

## I. RELEVANT BACKGROUND

As the parties are familiar with the background and procedural history of this case, the Court recites only those facts relevant to the present motions. Everest brought this action against ACM for breach of contract, indemnification, and declaratory judgment relating to a Master Contract for Claim Handling and Adjusting Services by and between Everest and ACM (the "Master Contract"). (*See generally* Doc. No. 1). Everest seeks indemnification from ACM for its defense of two claims pursuant to the indemnification clause of the Master Contract. (*See* Doc. No. 1 at ¶¶ 4-13). That indemnification clause provides: "Adjuster shall indemnify, defend and hold Client harmless from and against any liability, damages, disputes, claims, demands or actions, including litigation or arbitration ('Loss') arising from the negligent acts or omissions of Adjuster . . . ." (Doc. No. 1 at ¶ 23). Specifically, Everest seeks damages and indemnification related to ACM's handling of a May 2017 claim brought by Jay Jervis (the "Jervis Claim") and a February 2018 claim brought by Jorge Garibaldi (the "Garibaldi Claim"). (*See* Doc. No. 1 at ¶¶ 4-13).

The Jervis Claim involved a motorcycle accident with Everest's insured. (*See* Doc. No. 1 at ¶ 25). Pursuant to the Master Contract, ACM considered a settlement demand made by Jervis. (Doc. No. 1 at ¶¶ 32-33). After negotiations failed, Jervis filed suit, and Everest assumed its insured's defense. (Doc. No. 1 at ¶ 34). Everest allegedly made numerous demands that ACM indemnify Everest, which ACM refused. (Doc. No. 1 at ¶¶ 41-42). The Garibaldi Claim allegedly involved a workers' compensation claim brought by an employee of Everest's insured. (Doc. No. 1 at ¶¶ 44-46). ACM handled the claim on Everest's behalf pursuant to the Master Contract. (Doc. No. 1 at ¶ 47). ACM allegedly denied the claim without consulting Everest. (Doc. No. 1 at ¶ 55). Garibaldi later filed suit against Everest and ACM, among others, for allegedly engaging in bad faith conduct which resulted in the denial of his claim. (Doc. No. 1 at ¶ 60). Everest allegedly

made numerous demands to ACM to assume the defense of that lawsuit, which ACM denied. (Doc. No. 1 at ¶¶ 70-76). After reaching a settlement with Garibaldi, Everest demanded that ACM reimburse it for the settlement amount plus its own legal fees. (Doc. No. 1 at ¶ 78). ACM again refused. (Doc. No. 1 at ¶ 79). Everest then brought this suit against ACM for breach of the Master Contract and indemnification relating to the Jervis Claim and the Garibaldi Claim. (Doc. No. 1 at ¶¶ 80-118).

While discovery proceeded, in a letter to the Court dated June 19, 2023, ACM referenced a "draft claims services agreement" Everest provided to "a company related to ACM."[1] (Doc. No. 29 at pp. 7-8). ACM referred to that draft agreement in support of its claim that the indemnification provision of the Master Services Agreement is narrow and Everest, had it chosen, could have drafted a broader indemnification provision as it has done in other instances. (Doc. No. 29 at pp. 7-8). That same day, counsel for Everest sent an email to counsel for ACM demanding production of the referenced draft agreement, which ACM had not previously produced. (Doc. No. 112-4, Exhibit B). After receiving no response, counsel for Everest again demanded production of the draft agreement the next day. (Doc. No. 112-4, Exhibit B). Counsel for Everest sent a third email dated June 25, 2023 demanding a copy of the draft agreement, otherwise it would seek relief from the Court. (Doc. No. 112-4, Exhibit B). On June 26, 2023, counsel for ACM responded that "Everest is in possession of the draft agreement and related communications" and identified Health Special Risk, Inc. as the other party to the agreement. (Doc. No. 112-4, Exhibit B). ACM also provided the names of three individuals at Everest it understood to have knowledge of the draft agreements and indicated "that the time frame of the communications was roughly between

[1] Unbeknownst to Everest at the time, the draft agreement ACM referred to in its letter is a proposed third-party claims administration agreement exchanged between Everest and Health Special Risk, Inc. ("Draft HSR Agreement").

February 2023 through June 2023." (Doc. No. 112-4, Exhibit B). ACM did not produce the Draft HSR Agreement. (Doc. No. 112-4, Exhibit B).

The Draft HSR Agreement was not raised again until February 14, 2025, when Everest learned that ACM provided the document to its expert witness. (Doc. No. 112-2 at ¶ 11). Everest raised the issue of ACM's failure to produce the draft agreement during a status conference on February 24, 2025. The Court ordered ACM to produce that draft agreement, and ACM stated it would do so. (*See* Doc. No. 112-2 at ¶ 12; Doc. No. 117 at p. 4). Nevertheless, ACM did not produce the Draft HSR Agreement.

On January 31, 2025, Everest filed a motion for summary judgment, and ACM filed a motion for partial summary judgment. (*See* Doc. Nos. 104, 105). In support of its motion, Everest argues, *inter alia*, that it need only show potential liability to trigger the Master Contract's indemnification clause and that ACM waived any right to challenge the settlements reached by Everest by refusing its tenders. (*See* Doc. No. 105-1 at pp. 19-25). ACM filed its opposition to Everest's motion for summary judgment on March 3, 2025, seven days after the February 24, 2025 status conference. (*See* Doc. No. 107). In that brief, ACM argues that the indemnification clause is triggered only upon a determination that ACM acted negligently. (*See* Doc. No. 107 at pp. 18-23). In support of its contention, ACM cites to and attaches to the Kaney Declaration the Draft HSR Agreement, as well as the fully executed version of same (the "HSR Agreement" and, collectively with the Draft HSR Agreement, the "HSR Agreements"), which it had not produced to Everest. (*See* Doc. No. 107 at p. 23; Doc. No. 108). ACM claims the HSR Agreements demonstrate that Everest is capable of drafting broader indemnification agreements which trigger upon mere allegations of negligence. (*See* Doc. No. 107 at p. 23).

On March 14, 2025, Everest moved to strike the Kaney Declaration and HSR Agreements pursuant to Federal Rule of Civil Procedure 37(c)(1) because of ACM's failures to produce the agreements and identify Kaney as an individual with relevant knowledge in discovery. (Doc. No. 112).

On March 17, 2025, ACM filed its reply in further support of its own motion for partial summary judgment. (Doc. No. 114). ACM annexes to the declaration in support of its reply a copy of a partially redacted agreement between Everest and Engle Martin and Associates, Inc. (the "Engle Martin Agreement"). (Doc. No. 114-2, Exhibit 1). ACM obtained the partially redacted Engle Martin Agreement from a public docket in *Everest Indemnity Insurance Company v. Engle Martin & Associates, LLC*, No. 19-15564 (D.N.J. 2019). In that matter, counsel for Everest—the same counsel of record here—filed a copy of the Engle Martin Agreement under seal in opposition to a motion to dismiss and later filed a partially redacted version of the Engle Martin Agreement on the public docket. *See Everest Indemnity Insurance Company v. Engle Martin & Associates, LLC*, No. 19-15564, Doc. Nos. 17-1, 24-3 (D.N.J.). ACM did not produce a copy of the Engle Martin Agreement to Everest before attaching it as an exhibit to its reply in further support of its motion for partial summary judgment.

On March 24, 2025, ACM filed its opposition to the Motion to Strike the Kaney Declaration. (Doc. No. 117). On March 31, 2025, Everest filed its reply on that motion. (Doc. No. 118). On April 11, 2025, Everest moved to strike the Engle Martin Agreement. (Doc. No. 119). Everest further moved for sanctions due to ACM's failure to produce the HSR Agreements and the Engle Martin Agreement before relying on them in support of its summary judgment briefing. (Doc. No. 119). ACM filed its opposition to the Motion to Strike the Engle Martin

Agreement on April 21, 2025, (Doc. No. 120), and, on April 28, 2025, Everest filed its reply, (Doc. No. 121).

## II. LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery. *Spikes v. Hamilton Farm Golf Club, LLC*, No. 13-3669, 2016 WL 355075, at *3 (D.N.J. Jan. 28, 2016). Rule 26(a) requires parties to disclose the name and contact information for "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses[.]" Fed. R. Civ. P. 26(a)(1)(A)(i). In addition, a party must produce a copy or description "of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use to support its claims or defenses[.]" Fed. R. Civ. P. 26(a)(1)(A)(ii). The Federal Rules of Civil Procedure further require the attorney of record to sign any discovery disclosures and responses to certify that, "after a reasonable inquiry[,]" the disclosure and response "is complete and correct as of the time it is made[.]" Fed. R. Civ. P. 26(g)(1)(A). Indeed, "Rule 26(g) requires all attorneys to engage in pretrial discovery in a responsible manner consistent with the spirit and purposes of liberal discovery." *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 703 (D.N.J. 2015). The Rule further states that Courts "must impose an appropriate sanction" if a certification violates the Rule "without substantial justification." Fed. R. Civ. P. 26(g)(3). A party must also supplement its discovery responses and productions "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e).

If a party fails to disclose or supplement its responses, that party cannot "use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In the event a party fails to

meet its discovery obligations, District Courts exercise "broad discretion to fashion a remedy," which may include an award of reasonable attorneys' fees, an adverse jury instruction, or other appropriate sanctions. *Reed v. Binder*, 165 F.R.D. 424, 431 (D.N.J. 1996); Fed. R. Civ. P. 37(c)(1).

However, "sanctions are not to be applied without limit." *Ford Motor Co. v. Edgewood Props., Inc.*, No. 06-1278, 2011 WL 5828661, at *3 (D.N.J. Nov. 18, 2011). Courts "exercise particular restraint in considering motions to exclude evidence." *Horizon Blue Cross Blue Shield of N.J. v. Transitions Recovery Program*, No. 10-3197, 2014 WL 1315661, at *3 (D.N.J. Mar. 28, 2014); *see also ABB Air Preheater, Inc. v. Regenerative Env't Equip. Co.*, 167 F.R.D. 668, 671 (D.N.J. 1996). As such, when considering whether to exclude evidence for a failure to disclose or supplement, the Court considers four factors:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure the prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of a case or other cases in court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

*Ford Motor Co.*, 2011 WL 5828661, at *3.

## III. DISCUSSION

### A. THE KANEY DECLARATION

The Court first considers Everest's Motion to Strike the Kaney Declaration. Everest argues that the Court must strike the Kaney Declaration and the attached HSR Agreements because the HSR Agreements were never produced in discovery, Kaney was never identified as a witness with knowledge relevant to this lawsuit, and the HSR Agreements are not relevant to this dispute. (*See* Doc. No. 112-1 at pp. 4-8). In response, ACM argues that: it "produced" the HSR Agreements by attaching them as an exhibit to its opposition brief and had disclosed their existence and details within the discovery period; Everest never propounded any follow-up discovery or expressed that

ACM's disclosure was inadequate; and the HSR Agreements are relevant to this dispute. (*See* Doc. No. 117 at pp. 4-8).

As discussed above, Rule 26(a) of the Federal Rules of Civil Procedure required ACM to identify individuals likely to possess relevant information as well as documents that it would use to support its defenses. Fed. R. Civ. P. 26(a)(1)(A). ACM, however, did not identify Kaney, produce the HSR Agreements, or timely supplement its productions, notwithstanding requests to produce the HSR Agreements. ACM at least contemplated relying in part upon the HSR Agreements in support of its defenses as early as June 2023. In a letter to the Court dated June 19, 2023, ACM alluded to the HSR Agreements, without specifically identifying them, to claim that Everest is capable of drafting broader indemnification clauses than the one in the Master Contract—the same argument ACM raised in its summary judgment briefing. (*Compare* Doc. No. 29 at pp. 7-8 *with* Doc. No. 107 at p. 23). Despite being aware of the HSR Agreements and their purported relevance to and use in this action, ACM failed to produce those documents before referring to them in its letter to the Court. *See Industria de Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, No. 16-6576, 2022 WL 1683747, at *11 (D.N.J. May 26, 2022) ("It is well settled that a party's failure to timely produce plainly relevant and responsive discovery, and to timely supplement that discovery when that party knows its responses are incomplete or incorrect, may constitute withholding." (citation omitted)).

Nor did ACM produce the HSR Agreements or identify Kaney after the June 2023 letter. Following ACM's June 2023 letter, counsel for Everest promptly requested production of the referenced agreements. (*See* Doc. No. 112-4, Exhibit B). ACM refused to produce the documents and instead asserted that Everest was already in possession of them. (Doc. No. 112-4, Exhibit B). ACM identified the other party to the agreement, the names of three Everest employees with

potential knowledge of the agreement, and the timeframe during which Everest might locate relevant documents. (Doc. No. 112-4, Exhibit B). ACM did not, however, produce the HSR Agreements or identify Kaney as someone with knowledge of those agreements. (*See* Doc. No. 112-4, Exhibit B). Nor did ACM produce the HSR Agreements after this Court ordered it to do so. Instead, seven days after the Court's order, ACM attached the HSR Agreements to the Kaney Declaration in opposition to Everest's motion for summary judgment, making clear for the first time which specific agreements it relied upon for its arguments. (Doc. No. 108).

ACM's claim that it "produced" the HSR Agreements by attaching them as an exhibit to its opposition to Everest's motion for summary judgment is unavailing. (*See* Doc. No. 117 at p. 4). A party's failure to produce a document is not cured by attaching said document to a motion, particularly a dispositive motion.[2] Instead, the Federal Rules of Civil Procedure clearly contemplate suppression of any such evidence. *See Horizon Blue Cross*, 2014 WL 1315661, at *3 (suppressing exhibits to a summary judgment motion containing a calculation of damages that were not previously produced); *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 104-06 (D.N.J. 2006) (suppressing exhibits to a summary judgment motion which the defendants did not previously produce); *Wilczynski v. Redling*, No. 12-4335, 2014 WL 5361916, at *6 (D.N.J. Oct. 21, 2014) (suppressing summary judgment exhibits that were not previously produced despite being in the defendants' control and clearly relevant to the litigation). Here, ACM clearly did not produce the

[2] If ACM were correct that attaching an exhibit to a motion constitutes "production," the text of Rule 37(c) would be entirely without meaning. Indeed, Rule 37(c) would never operate to bar the introduction of evidence because any document submitted in connection with a motion would be considered "produced," irrespective of whether the party provided that document to opposing counsel before filing the motion. ACM's claim that it "produced" the HSR Agreements is therefore inconsistent with the text and the spirit of Rule 37.

HSR Agreements prior to proffering them in connection with Everest's summary judgment motion, notwithstanding the Court's order to do so.[3]

ACM's contention that Rule 37(c) has no application here because it disclosed certain details about the agreement is equally unpersuasive. Rule 26 requires a party to identify individuals with knowledge and to produce either a copy or a description by category and location of documents that it may rely upon in support of its claims and defenses. Fed. R. Civ. P. 26(a)(1)(A)(ii). Moreover, Rule 34 requires parties to produce copies or permit inspection of documents, Fed. R. Civ. P. 34(b)(2)(B), and "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request," Fed. R. Civ. P. 34(b)(2)(E). Indeed, parties have an obligation to conduct pretrial discovery in a manner consistent with the "spirit and purposes of liberal discovery." *Younes*, 312 F.R.D. at 703.

While ACM provided *some* information about the HSR Agreements in response to Everest's demand for production, (Doc. No. 112-4, Exhibit B), that description was deficient, leading to the Court's order to produce the documents themselves. ACM identified the name of the other party to the agreement, Everest employees who may have knowledge of the agreement, and a six-month time frame within which the documents may be found. (Doc. No. 112-4, Exhibit B). ACM, however, never identified Kaney as having relevant information. ACM could have—and should have—simply produced the HSR Agreements and identified Kaney, and the failure to

[3] Although ACM submitted its opposition to Everest's motion for summary judgment only seven days after the February 24, 2025 conference with the Court, ACM has not explained why it could not have simply produced the HSR Agreements via email the same day as the conference or shortly thereafter.

do so is even more concerning in light of this Court's February 24, 2025 order. As such, ACM did not meet its discovery obligations. *See* Fed. R. Civ. P. 26(a), (e), and (g), 34(b)(2).

Having determined that ACM failed to disclose and supplement its discovery responses, the Court considers whether "the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Substantial justification is met if a reasonable person would find that "the parties could differ as to whether the party was required to comply with the disclosure request." *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 591 (D.N.J. 1997) (internal quotation marks and citation omitted). "The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there exists a genuine dispute concerning compliance." *Id.* (internal quotation marks and citation omitted). Here, ACM's failure is not substantially justified. Almost two years prior to annexing the HSR Agreements to the Kaney Declaration, ACM knew that it planned on relying on the agreements in support of its defenses and also knew that Everest sought their production. Still, even after the Court ordered ACM to produce the HSR Agreements, ACM did not produce the agreements but rather annexed them for the first time in motion practice. ACM offers no explanation for its failure to produce and supplement except that it held an incorrect belief that attaching the agreements to its opposition was the same as "producing" them. As such, there is not a genuine dispute as to whether ACM was obligated to produce the HSR Agreements. *See Industria de Alimentos Zenu*, 2022 WL 1683747, at *12 (finding no genuine dispute as to compliance where the defendants repeatedly failed to meet their discovery obligations which were "not of the type on which reasonable legal minds may disagree").

Further, the failure is not harmless. In determining if a failure was harmless, the Court looks to whether the adverse party suffered prejudice and its ability to cure any such prejudice. *See HomeSource, Corp. v. Retail Web Servs., LLC*, No. 18-11970, 2020 WL 12188147, at *8

(D.N.J. Mar. 30, 2020). Prejudice includes "the burden a party must bear when forced to file motions in response to the strategic discovery tactics of an adversary." *Wachtel*, 239 F.R.D. at 105 (citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222-23 (3d Cir. 2003)). Here, because ACM failed to identify Kaney and produce the HSR Agreements, Everest could not fully evaluate the authenticity, full import, or relevancy of those documents. While Everest was able to submit a reply on the motion, ACM's refusal to produce the HSR Agreements deprived Everest of a full and fair opportunity to evaluate those documents' impact—if any—on the claims and defenses asserted in this matter prior to filing its motion for summary judgment. Indeed, Everest expended substantial time and efforts to seek the production of the HSR Agreements in spite of ACM's tactics. Thus, ACM's discovery deficiencies were neither substantially justified nor harmless.

To determine if striking the Kaney Declaration and the HSR Agreements is the appropriate remedy, as discussed above, the Court considers four factors: (1) the prejudice or surprise to Everest; (2) Everest's ability to cure any prejudice; (3) "the extent to which allowing the evidence would disrupt the orderly and efficient trial" of this case; and (4) whether ACM acted in bad faith or willfulness in failing to produce the HSR Agreements. *Ford Motor Co.*, 2011 WL 5828661, at *3. As to the first factor, ACM's discovery lapses caused both surprise and prejudice to Everest. While ACM stated that there were other agreements—which turned out to be the HSR Agreements—that were potentially relevant to this case as early as June 19, 2023, ACM did not provide sufficient information for Everest to fully assess which agreements were at issue and who were the individuals at ACM's related entity with knowledge about such agreements. Moreover, Everest could not have predicted that ACM would ignore the Court's order to produce the documents prior to proffering them to the Court on a motion. (*See* Doc. No. 29 at pp. at 7-8). As noted above, ACM's failure to identify Kaney or produce the HSR Agreements was not harmless

and has caused prejudice to Everest. The first factor therefore favors exclusion of the Kaney Declaration and HSR Agreements.

Regarding the second factor, Everest has attempted to cure the prejudice by filing this motion to strike and filing its reply to ACM's opposition. However, because Everest was unable to assess the HSR Agreements prior to filing its motion for summary judgment, the prejudice cannot be fully cured short of striking the Kaney Declaration and the HSR Agreements. Indeed, Everest has not had the opportunity to challenge the veracity and relevancy of those documents or of the Kaney Declaration. To do so, fact discovery would need to be reopened to permit the deposition of Kaney, as well as to seek other discovery potentially related to the HSR Agreements.

As to the third factor, allowing the Kaney Declaration and the HSR Agreements into evidence on the pending summary judgment motions would disrupt resolution of this matter. As mentioned above, the Court would likely need to delay resolution of the summary judgment motion to permit Everest to conduct additional discovery. The third factor thus favors exclusion. Under the fourth factor, ACM's willful refusal to produce the HSR Agreements in response to demands for production of same and an order of this Court weigh in favor of precluding its reliance on the Kaney Declaration and the HSR Agreements. Accordingly, pursuant to Rule 37(c)(1),[4] the Court grants Everest's motion to strike the Kaney Declaration and the HSR Agreements. *See Wilczynski v. Redling*, No. 12-4335, 2014 WL 5361916, at *5-6 (D.N.J. Oct. 21, 2014) (finding exclusion of documents at trial warranted under Rule 37(c) where defendant first disclosed them on a motion for summary judgment).

[4] Although the Court makes this determination on the basis of Rule 37(c)(1), sanctions may also have been separately warranted by Rule 37(b)(2). *See* Fed. R. Civ. P. 37(b)(2). Although the parties did not address Rule 37(b)(2), the Court is seriously concerned with ACM's failure to abide by the February 24, 2025 Order.

### B. THE ENGLE MARTIN AGREEMENT

Turning next to Everest's Motion to Strike the Engle Martin Agreement, Everest argues that the Engle Martin Agreement must be excluded because ACM failed to produce same in discovery and is irrelevant. (*See generally* Doc. No. 119-1). It also argues that ACM improperly relies on the Engle Martin Agreement in support of a new argument in a reply and the Engle Martin Agreement is improperly cited in support of a legal argument couched in a statement of material facts. Everest also seeks sanctions in the form of reasonable attorney's fees incurred in pursuing both the Motion to Strike the Kaney Declaration and the Motion to Strike the Engle Martin Agreement. (*See generally* Doc. No. 119-1).

ACM opposes the Motion and contends that Everest never requested production of the Engle Martin Agreement and thus was not obligated to produce it or supplement its discovery responses. (*See generally* Doc. No. 120). It further points out that the Court can take judicial notice of the Engle Martin Agreement and, because Rule 56(c) of the Federal Rules of Civil Procedure permits parties to submit evidence in connection with summary judgment briefing, ACM properly attached the Engle Martin Agreement as relevant to the summary judgment dispute. ACM also argues that it properly proffers the agreement in reply because Everest "opened the door" by arguing that the Master Contract's indemnification clause is broad. (*See generally* Doc. No. 120).

As discussed above, Rule 26(a) requires parties to disclose individuals and documents that may be relied upon in support of their claims and defenses, and Rule 26(e) requires parties to supplement those disclosures. Unlike the HSR Agreements, which were the subject of specific and targeted discovery requests, Everest did not specifically request the Engle Martin Agreement, nor did the Court order ACM to produce it. However, Everest contends that the Engle Martin

Agreement falls within its request for any and all documents ACM intended to use at a deposition, hearing, or at trial. (*See* Doc. No. 119-1 at p. 2). While ACM produced documents in response to that request, it did not produce the Engle Martin Agreement. *See* Fed. R. Civ. P. 26(g). Because ACM anticipated using the Engle Martin Agreement in connection with any hearings on its partial summary judgment motion, the Engle Martin Agreement falls within the scope of Everest's broad discovery request. As a result, ACM failed to meet its discovery obligations as to the Engle Martin Agreement. *See* Fed. R. Civ. P. 26(a), 26(e), 26(g), 34(b)(2).

The Court next considers whether ACM's failure to disclose and supplement its discovery with the Engle Martin Agreement was substantially justified or harmless. As noted above, to be substantially justified, ACM's failure to produce must be reasonably based in law and fact, such that there's a genuine dispute as to its compliance with its discovery obligations. *See Industria de Alimentos Zenu*, 2022 WL 1683747, at *12. As to the Engle Martin Agreement, the Court finds ACM was substantially justified in not producing it in the course of fact discovery. While the Engle Martin Agreement did fall within Everest's requests for production, the relevant catch-all request is broadly worded. (*See* Doc. No. 119-1 at p. 2). Moreover, ACM asserts that it discovered the Engle Martin Agreement on a public docket only recently in the course of preparing to rebut Everest's summary judgment arguments. The Court may also take judicial notice of the Engle Martin Agreement because Everest filed it on a public docket in another matter.[5] *See* Fed. R. Evid. 201; *see also Roche v. Aetna, Inc.*, No. 22-607, 2023 WL 3173394, at *4 (D.N.J. May 1, 2023).

---

[5] Everest concedes that the Court may take judicial notice of the Engle Martin Agreement, but insists that judicial notice does not extend to ACM's contention that the Engle Martin Agreement's indemnification clause is broader than the one at issue here. (*See* Doc. No. 121 at pp. 3-4). Everest is correct. While the Court will not strike the Engle Martin Agreement, the District Judge will determine the relevance and import of the Engle Martin Agreement, if any, in resolving the pending summary judgment motions.

Because the Engle Martin Agreement is in Everest's possession and on a public docket, ACM only discovered it recently, and the Court may take judicial notice of it, the Court finds the failure to produce is substantially justified. As such, striking the Engle Martin Agreement is not warranted pursuant to Federal Rule of Civil Procedure 37(c)(1).

The Court next addresses Everest's arguments that the Engle Martin Agreement should be excluded because ACM cites it in support of a new argument improperly raised in a reply, is improperly cited in support of a legal argument couched in a statement of material facts, and is irrelevant to the issues involved in this matter. (*See generally* Doc. No. 119-1). However, the propriety of the arguments raised and their relevance to the merits of the parties' argument are better decided by the District Judge who is evaluating the pending motions for summary judgment. The Court here rather limits its determination solely as to whether Rule 37 of the Federal Rules of Civil Procedure requires exclusion of the Engle Martin Agreement.

Lastly, the Court considers Everest's request for monetary sanctions. Everest seeks attorney's fees incurred in filing both the Motion to Strike the Kaney Declaration and the Motion to Strike the Engle Martin Agreement. (*See generally* Doc. No. 119-1). Pursuant to Rule 37(c)(1), the Court exercises discretion in awarding "reasonable expenses, including attorney's fees, caused by the failure" to disclose or supplement discovery. Fed. R. Civ. P. 37(c)(1)(A). Such a sanction would be "[i]n addition to or instead of" striking the evidence. *Id.* Considering the Court grants Everest's Motion to Strike the Kaney Declaration and finds ACM was substantially justified in failing to produce the Engle Martin Agreement, the Court declines to award the additional sanction of the imposition of attorneys' fees. *See N.J. Physicians United Reciprocal Exch. v. Med. Protective Co.*, No. 13-2286, 2017 WL 3623801, at *12 (D.N.J. Aug. 23, 2017) (excluding

evidence but declining to award attorney's fees). Accordingly, the Court denies Everest's Motion to Strike the Engle Martin Agreement.

## IV. CONCLUSION

For the foregoing reasons, and for other good cause shown, the Court grants Everest's Motion to Strike the Kaney Declaration and denies Everest's Motion to Strike the Engle Martin Agreement. Accordingly, having considered the parties' submissions, and for the reasons set forth herein and for other good cause shown,

**IT IS, THEREFORE**, on this day **8th** of **August 2025**,

**ORDERED** that Everest's Motion to Strike the Kaney Declaration (Doc. No. 112) is hereby **GRANTED**; and it is further

**ORDERED** that Everest's Motion to Strike the Engle Martin Agreement (Doc. No. 119) is hereby **DENIED**; and it is further

**ORDERED** that, in light of this Opinion and Order, the parties shall resubmit their respective briefing associated with Everest's Summary Judgment Motion (Doc. No. 105) to comply with the terms of this Order by no later than August 25, 2025; and it is further

**ORDERED** that the Clerk of the Court is hereby directed to **TERMINATE** the Motions pending at Docket Entry Numbers 112 and 119; and it is further

**ORDERED** that the Clerk of the Court shall administratively **TERMINATE** the Motion pending at Docket Entry Number 105, which will be reinstated upon the resubmission of the parties' respective briefing.

**SO ORDERED**.

/s/ Rukhsanah L. Singh
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**