# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EVEREST NATIONAL INSURANCE COMPANY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN CLAIMS MANAGEMENT, INC.,<br><br>Defendant. | Civil Action No. 22-2710 (MAS) (RLS)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

**RUKHSANAH L. SINGH, United States Magistrate Judge**.

**PRESENTLY** before the Court is a Motion by Plaintiffs Everest National Insurance Company and Everest Security Insurance Company (collectively, "Everest") to Disqualify Defendant American Claims Management, Inc.'s ("AMC") expert witness, Robert Wisniewski, and its counsel, Stradley Ronon Stevens & Young, LLP (the "Motion to Disqualify"). (Doc. No. 98). ACM opposes the Motion to Disqualify, (Doc. No. 100), to which Everest replied, (Doc. No. 102). The Court has fully considered the parties' written submissions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below and for good cause shown, the Court **GRANTS IN PART** and **DENIES IN PART** Everest's Motion to Disqualify.

## I.    RELEVANT BACKGROUND

As the parties are familiar with the background and procedural history of this case, the Court recites only those facts relevant to the present Motion. On January 1, 2016, Everest and ACM entered into a Master Contract for Claim Handling and Adjusting Services (the "Master Contract"), pursuant to which ACM would provide Everest with claims-related services for certain

1

insurance policies issued by Everest. (Doc. No. 98-3, Exhibit 1). On November 22, 2017, Jorge Garibaldi allegedly injured his back while performing his duties as an employee of Valley Fire and Water Restoration Inc., which Everest insured. (Doc. No. 1 at ¶¶ 44-46). Pursuant to the Master Contract and on behalf of Everest, ACM handled the Garibaldi claim, (Doc. No. 1 at ¶ 9; Doc No. 50 at ¶¶ 9-10), which it ultimately denied, (Doc. No. 1 at ¶¶ 47-52).

On March 20, 2019, Garibaldi filed suit against Everest and ACM in the United States District Court for the District of Arizona (the "Garibaldi Action"), alleging that the defendants wrongfully denied and unreasonably delayed payment of workers' compensation benefits for his workplace injuries. (Doc. No. 1 at ¶ 60). On April 24, 2019, Everest tendered to ACM the defense and indemnification of the Garibaldi Action. (Doc. No. 98-9, Exhibit A). ACM then moved to dismiss the complaint against it, which the court granted on October 7, 2019, finding no privity between Garibaldi and ACM. (Doc. No. 98-8, Declaration of John Wittwer,[1] at ¶ 6). ACM then rejected Everest's tender on October 18, 2019. (Doc. No. 98-10, Exhibit B).

In June of 2020, Everest retained Robert Wisniewski to serve as an expert witness in the Garibaldi Action to opine on Arizona workers' compensation law. (Doc. No. 98-8, Declaration of John Wittwer, at ¶¶ 19-20; *see also* Doc. No. 98-16, Exhibit H). Specifically, Everest tasked Wisniewski with rendering an expert opinion as to whether ACM handled Garibaldi's claim in a manner consistent with the laws, practices, and customs before the Industrial Commission of Arizona. (Doc. No. 100-1, Declaration of Robert Wisniewski, at ¶ 4). Following Wisniewski's retention, Everest's counsel prepared documents for Wisniewski's review, had multiple communications with him about those documents, and provided its theories of the case and mental impressions. (Doc. No. 98-8, Declaration of John Wittwer, at ¶¶ 21-22). On August 27, 2020,

---

[1] John Wittwer served as counsel to Everest in the Garibaldi Action.

Wisniewski submitted his final report, which concluded that ACM handled the claim reasonably and within the standard of care. (Doc. No. 98-16, Exhibit H). Everest subsequently attached that report as an exhibit to its motion for summary judgment. (Doc. No. 98-16, Exhibit H; Doc. No. 98-8, Declaration of John Wittwer, at ¶ 30).

On November 23, 2020, then counsel for Everest, Wittwer, contacted counsel for ACM to advise that the Garibaldi Action was in the midst of summary judgment briefing and that Everest anticipated receiving a settlement demand from Garibaldi. (Doc. No. 98-11, Exhibit C). Wittwer reiterated the position that ACM was obligated to indemnify Everest and invited ACM to participate in settlement discussions. (Doc. No. 98-11, Exhibit C). Counsel for ACM responded that "there is no indication that ACM did anything wrong or has any liability in this matter" and accordingly declined Everest's invitation to participate in or contribute to a potential settlement with Garibaldi. (Doc. No. 98-11, Exhibit C). On August 12, 2021, the District Court in the Garibaldi Action denied Everest's motion for summary judgment, finding that a reasonable jury could find that ACM denied Garibaldi's claim in bad faith. (Doc. No. 98-12, Exhibit D).

On September 10, 2021, Wittwer sent a letter to counsel for ACM advising of the outcome of Everest's summary judgment motion and re-tendering to ACM the defense of the Garibaldi Action. (Doc. No. 98-12, Exhibit D). After receiving no response, Wittwer sent another letter to ACM's counsel again requesting that ACM participate in an upcoming mediation. (Doc. No 98-13, Exhibit E). ACM did not respond to that letter either. (Doc. No. 98-8, Declaration of John Wittwer, at ¶ 15). On November 24, 2021, Wittwer informed ACM that mediation would take place on December 14, 2021 and re-tendered the claim to ACM. (Doc. No. 98-14, Exhibit F). ACM again rejected Everest's tender. (Doc. No. 98-15, Exhibit G). Everest and Garibaldi ultimately settled the Garibaldi Action without ACM's involvement. (Doc. No. 1 at ¶¶ 76-77).

3

On May 9, 2022, Everest initiated the instant action against ACM, seeking, *inter alia*, enforcement of the Master Agreement to cover the Garibaldi settlement and costs. (*See generally* Doc. No. 1). Discovery ensued. On November 15, 2024, ACM disclosed that it retained Wisniewski as one of its expert witnesses and produced his expert report. (Doc. No. 98-2, Declaration of Joseph Schiavone, at ¶ 3; Doc. No. 98-4, Exhibit 2). In his expert report on behalf of ACM, Wisniewski reached the conclusion that ACM handled Garibaldi's claim in accordance with Arizona's standards, customs, and typical practices. (Doc No. 98-4, Exhibit 2).

On December 3, 2024, after receiving a copy of Wisniewski's report, current counsel for Everest sent a letter to ACM's counsel requesting withdrawal of Wisniewski's designation as an expert, arguing that Wisniewski's service as ACM's expert is inconsistent with his obligations to Everest. (Doc. No. 98-5, Exhibit 3). On December 10, 2024, ACM's counsel replied to the letter, declining to withdraw its designation of Wisniewski as an expert witness and reserving its right to call Wisniewski as a fact witness at trial. (Doc. No. 98-6, Exhibit 4). On December 11, 2024, Everest raised the issue with the Court, seeking to disqualify Wisniewski, which ACM opposed. (Doc. No. 93; *see also* Doc. No. 94). On December 12, 2024, the Court ordered the parties to further meet and confer regarding Wisniewski and, if still at an impasse, directed Everest to file a formal motion to disqualify. (Doc. No. 95).

On January 6, 2025, Everest filed the instant Motion to Disqualify. (Doc. No. 98). Generally, Everest asks the Court to disqualify both Wisniewski and ACM's counsel, claiming that Wisniewski had access to Everest's confidential information relevant to this litigation and that his retention will taint the litigation. (*See generally* Doc. No. 98-1). ACM opposes Everest's motion, arguing that: (1) Wisniewski has not switched sides; (2) Everest's relationship with Wisniewski was not confidential as to ACM; and (3) Everest did not provide Wisniewski with any

information relevant to this litigation. (*See generally* Doc. No. 100). ACM further argues that there is no basis to disqualify its attorneys. (*See generally* Doc. No. 100).

## II.    DISCUSSION

### A.    DISQUALIFICATION OF THE EXPERT

#### *1.    Legal Standard*

Courts hold the inherent power to disqualify an expert witness to promote the interests of confidence in the fairness and integrity of the judicial process and to protect privileges of confidence that may be breached in instances where an expert "switches sides." *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 580-81 (D.N.J. 1994); *Cherry Hill Convalescent, Ctr., Inc. v. Healthcare Rehab Sys., Inc.*, 994 F. Supp. 244, 248 (D.N.J. 1997). Courts in this District apply a two-prong test in considering disqualification of an expert: (1) whether it was "objectively reasonable for the first party who retained the expert to believe that a confidential relationship existed[;]" and (2) whether that party "disclose[d] any confidential information to the expert." *Cherry Hill*, 994 F. Supp. at 249. The party seeking disqualification bears the burden of establishing both prongs. *Id.* (citing *Koch Refin. Co. v. Boudreaux MV*, 85 F.3d 1178, 1183 (5th Cir. 1996)).

Courts also weigh the policy objectives of preventing conflicts of interest and maintaining the integrity of the judicial process against the policy objectives of ensuring access to expert witnesses and allowing those experts to pursue their professions. *Cordy*, 156 F.R.D. at 580. "In balancing these concerns, courts have considered whether another expert is available and whether the opposing party would be unduly burdened by having to retain a new expert." *Cherry Hill*, 994 F. Supp. at 251-52 (citing *Koch Refin. Co.*, 85 F.3d at 1183).

In seeking to disqualify Wisniewski, Everest contends that it was objectively reasonable for it to believe that it had a confidential relationship with Wisniewski and that it shared with him

confidential information relevant to this litigation. (*See generally* Doc No. 98-1). Everest thus argues that Wisniewski cannot "switch sides" and serve as an expert for ACM adverse to Everest. ACM counters that Wisniewski has not switched sides because Wisniewski's opinions in the Garibaldi matter are consistent with his opinions in this litigation. (*See* Doc. No. 100 at pp. 10-13). As such, according to ACM, the Court need not even apply the standard for disqualification of an expert. ACM further contends that, even if the Court were to apply the standard, Everest cannot establish that it had a confidential relationship with Wisniewski as to ACM or that Everest provided any confidential information to Wisniewski that is relevant to this litigation. (*See generally* Doc. No. 100). In reply, Everest contends, among other things, that the disqualification analysis applies even if an expert's opinions do not change; the triggering event is when a party retains an expert that was previously retained by the adverse party. (*See generally* Doc. No. 102).

As a threshold matter, the Court finds the disqualification standard applicable here. Everest hired Wisniewski in the Garibaldi Action to opine on ACM's handling of Garibaldi's claim. (Doc. No. 98-8 at ¶¶ 21-22). That is precisely the subject on which ACM retained Wisniewski to render an expert opinion here. (*See* Doc. No. 98-4, Exhibit 2). This matter and the Garibaldi Action are inextricably linked. Moreover, courts considering expert disqualification focus on the nature of the relationship and sharing of confidential information between a party and its expert; they do not focus on whether the expert's opinions have changed. *See Cordy*, 156 F.R.D. at 581-82; *Cherry Hill*, 994 F. Supp. at 249-50. Because Wisniewski seeks to proffer his opinions in support of ACM and adverse to Everest but had a prior expert relationship with Everest in a related matter, the Court finds Wisniewski has "switched sides" and turns to the two-pronged analysis to determine whether disqualification of Wisniewski is appropriate.

### 2.    *Confidential Relationship*

The first factor—whether it was objectively reasonable for the movant to believe that a confidential relationship existed with the expert—is fact specific.  *See Cordy*, 156 F.R.D. at 581. This consideration includes: (1) whether the party's belief in a confidential relationship is objectively reasonable; and (2) whether the party has waived the confidential nature of that relationship.  *Cordy*, 156 F.R.D. at 580 (citing *English Feedlot, Inc. v. Norden Lab'ys, Inc.*, 833 F. Supp. 1498, 1501 (D. Colo. 1993)); *see also Cherry Hill*, 994 F. Supp. at 249.  Whether a confidential relationship exists or not is also fact sensitive.  *See M&T Bank v. Worldwide Supply LLC*, No. 20-6378, 2022 WL 16743689, at *3 (D.N.J. June 28, 2022).  A court thus may consider: whether there were any contractual obligations or professional duties of confidentiality; the nature and extent of the relationship between the movant and the expert; whether the expert will testify; the nature of the communications between the expert and movant; and "'whether the moving party funded or directed the formation of the opinion to be offered at trial.'"  *Id.* (quoting *Chiesi USA, Inc. v. Sandoz Inc.*, No. 13-5723, 2015 WL 13932698, at *6 (D.N.J. Mar. 31, 2015)).

The parties do not appear to dispute that Everest had a confidential relationship with Wisniewski.  Rather, ACM argues that the confidential relationship was not confidential *as to ACM.*  (*See* Doc. No. 100 at pp. 13-14).  ACM claims that because Everest invited ACM to "step into its shoes," including with respect to its relationship with Wisniewski, Everest cannot reasonably believe that its relationship with Wisniewski was confidential as to ACM.  (Doc. No. 100 at pp. 13-14).

The Court disagrees.  While Everest may have invited ACM to participate in the Garibaldi Action, ACM never accepted that invitation.  A joint defense was never cemented between ACM and Everest, and ACM took no part in discussions with or regarding Wisniewski throughout the

Garibaldi Action. (*See* Doc. No. 98-8 at ¶ 35). Although Wisniewski's report in the Garibaldi Action would have benefitted ACM, ACM was already dismissed from that action and was not cooperating with Everest in the litigation. Indeed, ACM's communications in response to Everest's repeated tender requests indicate that ACM and Everest had adverse interests. "The objectively reasonable belief standard is not a high hurdle to clear." *M&T Bank*, 2022 WL 1674369, at *3 (internal quotation marks and citation omitted). It is, thus, objectively reasonable for Everest to believe that it maintained a confidential relationship with Wisniewski and one that remained confidential even as to ACM.

### 3. Waiver

Further, contrary to ACM's arguments otherwise, Everest did not waive its confidentiality. A party waives the confidentiality of an expert when it discloses information "in a manner inconsistent with keeping the documents from the adversary." *Gen. Motors LLC v. Ashton*, No. 20-12659, 2022 WL 16817711, at *2 (D.N.J. Nov. 7, 2022) (quoting *Goldenberg v. Indel, Inc.*, No. 09-5202, 2012 WL 12906333, at *5 (D.N.J. May 31, 2012)). Here, ACM contends that Everest waived its expectation of confidentiality with Wisniewski by producing in this litigation letters, e-mails, and draft expert reports exchanged between Wittwer and Wisniewski. (Doc. No. 100 at p. 14; Doc. No. 100-2, Exhibits 10, 11, and 12). ACM further points to Wittwer's deposition testimony in this matter, wherein Wittwer testified as to some discussions with Wisniewski and his mental impressions of the Garibaldi Action. (*See* Doc. No. 100 at pp. 16-17; Doc. No. 100-2, Exhibit 7). However, a review of the emails and letters reflects that they are merely cover letters and statements regarding payments. (*See* Doc. No. 100-2, Exhibits 10 and 11). They do not contain sensitive or confidential information. Similarly, Wittwer's testimony does not reveal strategic confidential communications with Wisniewski. (*See* Doc. No. 100-2, Exhibit 7). Rather,

Wittwer discusses non-confidential information regarding Wisniewski's role as an expert and Wisniewski's views about a certain medical provider. (*See* Doc. No. 100-2, Exhibit 7 at 123:9–124:10, 222:20–226:6). Accordingly, Everest did not waive its expectation of confidentiality as to Wisniewski by producing the letters or emails or through the deposition of Wittwer.

The analysis for the draft expert reports requires a closer look, however. As for the draft reports, one does not appear to include edits or markings, but the other one includes what appear to be highlighted portions and comments. (*See* Doc. No. 100-2, Exhibit 12). These documents no doubt reflect confidential material that are typically protected pursuant to Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b)(4)(B). However, Everest argues that it produced these draft reports inadvertently and was unaware they had been produced. (*See* Doc. No. 102 at p. 13). It adds that ACM should have notified it of the draft reports when ACM discovered them in the production, so that Everest could seek to "claw" them back.

The Federal Rules of Civil Procedure and the Federal Rules of Evidence address inadvertent production or disclosure of confidential material. If a party produced information in discovery that is subject to a claim of privilege or other protection from disclosure, that party can notify the party to whom the protected information was produced and demand the return, sequestration, or destruction of that information. Fed. R. Civ. P. 26(b)(5)(B). Through the Pretrial Scheduling Order entered in this matter, pursuant to Local Civil Rule 16.1(b)(2), the Court ordered "[t]he production of materials, inadvertent or otherwise, shall not be deemed a waiver of attorney-client privilege or work product protection in this civil action or in any other federal or State proceeding." L. Civ. R. 16.1(b)(2)(i); (*see* Doc. No. 15). That order incorporated and is consistent with Federal Rule of Evidence 502(d), which provides: "A federal court may order that the

privilege or protection is not waived by disclosure connected with the litigation pending before the court." Fed. R. Evid. 502(d).

Here, Everest contends that the disclosure of the draft reports, although confidential and subject to work product privilege, was inadvertent. While Everest has not taken steps to rectify the error or claw back or seal those documents, many courts have found that entry of a Rule 502(d) order prevents waiver "regardless of whether the disclosure was inadvertent or any efforts were taken to prevent or rectify the same." *In re Outpatient Med. Cnt. Employee Antitrust Litig.*, No. 21-305, 2024 WL 4679083, at *4 (N.D. Ill. Nov. 5, 2024) (distinguishing Federal Rule of Evidence 502(b), which requires efforts to rectify an inadvertent disclosure, with Rule 502(d), which does not); *see also Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*, No. 09-8285, 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013) (preventing use of privileged material that were produced, inadvertently or otherwise, because the Court entered a stipulated Rule 502(d) order); *Rajala v. McGuire Wood, LLP*, No. 08-2638, 2013 WL 50200, at *5 (D. Kan. Jan. 3, 2013) (observing that Rule 502(d) is "designed to allow the parties and the Court to defeat the default operation of Rule 502(b) in order to reduce costs and expedite discovery").

While some courts have engrafted additional standards to determine if a waiver has occured even in the presence of a Rule 502(d) order,[2] this Court finds the plain language of Rule 502(d) to not be so constrained. Indeed, "the text of Rule 502(d) is not limited to 'inadvertent' disclosures[.]" The Sedona Conference, *The Sedona Conference Commentary on the Effective Use of Federal Rule of Evidence 502(d) Orders*, 23 SEDONA CONF. J. 1, 25 (2022). Based on the

---

[2] For example, other courts have found that waiver can occur even with the existence of a Rule 502(d) order, if the production was part of "a completely reckless disclosure" or if the producing party's review process was unreasonable. *See, e.g., DR Distributors, LLC v. 21 Century Smoking, Inc.*, 616 F. Supp. 3d 769, 785-86 (N.D. Ill. 2022) (discussing the differing views amongst courts).

plain language of Rule 502(d), many courts have declined to require a party seeking to maintain a privilege or work product to show that the disclosure was inadvertent and that it took reasonable steps to prevent the disclosure and to rectify the error. *See, e.g., United Physician Grp., LLC v. Leche*, 742 F. Supp. 3d 1251, 1258-59 (N.D. Ga. 2024) (discussing distinction between Rule 502(d) and 502(b) and declining to incorporate Rule 502(b)'s requirements where a Rule 502(d) order was entered based on Rule 502(d)'s plain language). This Court similarly so declines. As such, because discovery proceeded with the benefits of a Rule 502(d) order entered in this matter, the Court does not find that Everest waived its protections afforded under Rule 26(b)(4)(B) as to the draft reports.

### 4.    *Disclosure of Confidential Information*

Having determined that Everest meets the first prong of the relevant standard, the Court thus next considers whether Everest disclosed any confidential information to Wisniewski. *Cordy*, 156 F.R.D. at 581. ACM contends that Everest did not impart confidential information to Wisniewski about the present litigation and that Everest offers only generalized claims that it shared its theories of the case and mental impressions with Wisniewski. (Doc. No. 100 at p. 22).

In the context of expert disqualification, confidential information includes: "the [retaining party's] strategies in the litigation, the kinds of expert [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses." *Cherry Hill*, 994 F. Supp. at 250 (citing *Koch Refining Co.*, 85 F.3d at 1182). Here, Everest selected a package of documents it deemed relevant for Wisniewski's review, held multiple phone conferences with Wisniewski, explained its theories of the case and mental impressions, and reviewed draft reports with him. (Doc. No. 98-8, Declaration of John Wittwer, at ¶¶ 21-26). That is exactly the type of confidential information that parties

11

routinely share with their experts. *See Cherry Hill*, 994 F. Supp. at 250; *cf. Sosinavage v. Thomson*, No. 14-3292, 2021 WL 10716634, at *5 (D.N.J. Feb. 26, 2021) (denying motion to disqualify where movant did not assert that "strategic thoughts or impressions of counsel" or materials covered by the attorney work product doctrine were shared and did not show that any part of expert's report was based on shared confidential communications). The Court therefore finds that Everest's counsel shared confidential information with Wisniewski.

ACM contends that even if Everest shared confidential information with Wisniewski, that any such information is irrelevant to this action. (Doc. No. 100 at pp. 17-20). ACM's argument is unpersuasive. As ACM recognizes, Everest retained Wisniewski "to review and offer an opinion regarding ACM's handling of the [Garibaldi] claim." (Doc. No. 100 at p. 6). That is exactly the opinion ACM retained Wisniewski to provide in this case. (Doc. No. 100-1, Declaration of Robert Wisniewski, at ¶¶ 15-16 ("I am prepared and am willing to deliver the same opinions to a trier of fact in New Jersey that I was prepared and willing to deliver to a trier of fact in Arizona.")). Indeed, a significant issue between Everest and ACM is whether ACM handled Garibaldi's claim negligently or in bad faith. (*See* Doc. No. 100 at p. 8). If ACM were correct that Wisniewski's prior expert report is unrelated to this action, it would have no reason to retain him to offer "the very same expert opinions in the U.S. District Court for the District of New Jersey that Everest happily advanced in the U.S. District Court for Arizona." (Doc. No. 100 at p. 19). The confidential information Everest produced to Wisniewski is therefore relevant to the instant litigation.

Accordingly, Everest has carried its burden with respect to the second prong of the expert disqualification standard.

### 5.    *Policy Considerations*

When considering expert disqualification, the Court also considers the competing policy goals implicated by a disqualification. *See Cordy*, 156 F.R.D. at 580. "The policy objectives favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process," while the "policy objectives militating against disqualification are ensuring access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling." *Id.* The Court also considers whether the opposing party can retain a new expert and if it would be unduly burdened by having to do so. *M&T Bank*, 2022 WL 16743689, at *5.

Consideration of those purposes here favors disqualification. ACM has not claimed that it would be difficult or burdensome to retain another expert in Arizona workers' compensation law. Although ACM might incur further expense in retaining a new expert, ACM has not shown the Court any basis for which it could conclude that ACM would be unduly burdened. Yet, allowing ACM to continue with Wisniewski would undermine the trust parties routinely place in their experts to maintain confidences, undermining the integrity of the judicial process. In sum, the competing policy considerations here favor disqualification. Accordingly, the Court grants Everest's motion to disqualify Wisniewski from serving as ACM's expert in this matter.[3]

### B.    DISQUALIFICATION OF COUNSEL

### 1.    *Legal Standard*

Disqualification of counsel is a drastic remedy and should only be imposed when "absolutely necessary." *Carlyle Towers Condo. Ass'n, Inc. v. Crossland Savs., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996) (quoting *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114

---

[3] The Court declines to address herein whether a party may call Wiesniewski as a fact witness as the parties have not fully raised that issue in connection with this Motion to Disqualify.

(D.N.J. 1993)).  In considering a motion to disqualify, the Court weighs relative hardships, a party's ability to select counsel of its choice, and the applicable ethics rules and professional standards.  *See id.*; *see also Steel v. General Motors Corp.*, 912 F. Supp. 724, 733 (D.N.J. 1995) ("Resolution of a motion to disqualify requires the court to balance the need to maintain the highest standards of the legal profession against a client's right to freely choose his counsel." (internal quotation and editing marks omitted)).  A party seeking to disqualify counsel bears a heavy burden to "meet a 'high standard of proof[,]'" but all doubts must be resolved in favor of disqualification. *Alexander*, 822 F. Supp. at 1114 (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).  As such, "New Jersey Courts engage in a 'painstaking analysis of the facts' when addressing motions for disqualification." *Rohm and Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 227 (D.N.J. 2001) (citation omitted).

### 2.    *Application*

In seeking to disqualify ACM's counsel, Stradley Ronon Stevens & Young, LLP, Everest relies upon a three-pronged standard applied in *Cordy* to disqualify a law firm who retains a "side-switching" expert.  (Doc. No. 98-1 at p. 17).  Under that standard, Everest contends that Wisniewski must have disclosed Everest's confidential information to ACM and that ACM's access to such information will taint any further proceedings before this Court.  (Doc. No. 98-1 at p. 18).  In response, ACM contends that motions to disqualify counsel are only to be granted when absolutely necessary, which is not the case here because Everest has not detailed what confidential information Wisniewski allegedly disclosed to ACM that would be relevant to this action.  (Doc. No. 100 at p. 25).  It also argues that Everest fails to specify what "tactical advantage" ACM's counsel might have gained through the retention of Wisniewski.  (Doc. No. 100 at p. 26).

While the parties assume *Cordy* is good law as to the three-pronged standard, this Court is not so convinced. In *Cordy*, the Court considered whether to disqualify a law firm that retained an expert who was previously retained by the adverse party and who the Court disqualified. *Cordy*, 156 F.R.D. at 583. While the *Cordy* Court noted that this District generally looks to the New Jersey Rules of Professional Conduct ("RPCs") to determine if disqualification is warranted, it found that that none were directly on point but the closest applicable RPC was RPC 1.7(c)(2). *Id.* (citing *Kaselaan & D'Angelo Assocs., Inc. v. D'Angelo*, 144 F.R.D. 235, 237-38 (D.N.J. 1992)). RPC 1.7(c)(2) precluded multiple representation if it would "'create[e] an appearance of impropriety rather than an actual conflict[.]'" *Id.* (quoting RPC 1.7(c)(2)).

In considering whether to disqualify counsel, the Court looked to the District of Connecticut to adopt a three-part standard. *Id.* at 583-84 (discussing *MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F. Supp. 712 (D. Conn. 1991)). That standard considers whether: (1) the expert had access to the movant's confidential information regarding trial preparation and strategy; (2) the expert disclosed any confidential information to adverse counsel; and (3) adverse counsel's continued representation "threaten[s] to 'taint' all further proceedings[.]" *Id.* (quoting *MMR*, 764 F. Supp. at 724). Notably, the *Cordy* Court relied upon the District of Connecticut's reasoning that counsel's inappropriate contact would create an appearance of impropriety. *See id.* at 583-84 (quoting *MMR*, 764 F. Supp. at 727 and 728). The *Cordy* Court, in applying that three-prong standard, disqualified counsel and, in so doing, "recognize[d] the importance of avoiding the appearance of impropriety, as reflected by the ethics rules." *Id.* at 584-85.

However, following *Cordy*, New Jersey abrogated the "appearance of impropriety" standard when, in 2003, the RPCs were amended to strike RPC 1.7(c)(2). *See in re Sup. Ct.*

15

*Advisory Comm. on Prof'l Ethics Op. No. 697*, 188 N.J. 549, 552 (2006) ("[W]e hold that the appearance of impropriety standard no longer retains any continued validity."). Since then, courts "have declined to apply appearance of impropriety as a basis for attorney disqualification." *Bals v. Metedeconk Nat'l Golf Club, Inc.*, No. 09-4861, 2010 WL 1373558, at *4 (D.N.J. Mar. 31, 2010). As such, the viability of the *Cordy* Court's three-pronged standard to disqualify counsel who retains an expert previously retained by the adverse party is questionable at best.

Here, Everest points to no RPC or other valid ethical obligation that ACM might have violated. The burden Everest must show to disqualify counsel is higher than the burden to disqualify an expert in large measure to protect the right to choice of counsel. In this instance, the Court cannot find that Everest meets that burden. In particular, Wisniewski avers that he did not disclose any confidential information to ACM's counsel. (Doc. No. 100-1 at ¶¶ 11-12). There is nothing in the record to rebut Wisniewski's statement. Because the burden on Everest is so high, and Everest has not pointed to any alleged violation of an RPC, the Court denies Everest's Motion to disqualify counsel.

## III.    CONCLUSION

For the foregoing reasons, and for other good cause shown, the Court grants in part and denies in part Everest's Motion to Disqualify. Accordingly, for good cause shown,

**IT IS, THEREFORE**, on this **15th** day of **August 2025**,

**ORDERED** that Everest's Motion to Disqualify (Doc. No. 98) is hereby **GRANTED IN PART** as to Everest's request to disqualify Wisniewski as serving as an expert on behalf of ACM and **DENIED IN PART** as to Everest's request to disqualify ACM's counsel; and it is further

**ORDERED** that the Clerk of the Court shall **TERMINATE** the Motion pending at Docket

Entry Number 98.

      **SO ORDERED**.

                                          **RUKHSANAH L. SINGH**
                                          **UNITED STATES MAGISTRATE JUDGE**